RIORANO, INC., SAIONO, INC., SCUDAMORE REALTY CORP., VITSANO, INC., RATORI, INC., HELIOS REALTY CORPORATION, PLAINTIFFS-RESPONDENTS, v. WEYMOUTH TOWNSHIP, DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted November 12, 1985—Decided April 15, 1986.

Before Judges FURMAN, COHEN and ASHBEY.

*Thomas F. Bullock,* attorney for appellant.

*Waters, McPherson & McNeill,* attorneys for respondents (*Daniel E. Horgan,* of counsel and *Joseph G. Ragno,* on the brief).

The opinion of the court was delivered by

COHEN, J.A.D.

Plaintiffs first appealed the tax assessments of their 1861 acres in Weymouth Township for the year 1980. In that case, their expert said that the property value had been depressed by 50% as a result of development restrictions imposed by the Pinelands Protection Act, *N.J.S.A.* 13:18A–1 *et seq.* Judge Rimm concluded that plaintiffs failed to present sufficient proof of the diminution of values, and thus upheld the assessments. *Riorano, Inc. v. Weymouth Tp.,* 4 *N.J.Tax* 550 (Tax Ct.1982). The judgment was affirmed by this court. 6 *N.J.Tax* 253 (App.Div.1983).

The present case involves the assessments of the same lands for the years 1981 and 1982. Judge Rimm concluded on the basis of new proofs that the Act's restrictions had demonstrated a substantial depressing influence. He therefore ordered the assessments lowered from a total of $774,200 to $573,188 for 1981 and $450,362 for 1982.[1] Defendant appealed. We

---

[1]The lower 1982 assessment does not represent a finding of further depression in value, but, rather, a change in the municipality's ratio of assessed to true values. *See N.J.S.A.* 54:1–35a *et seq.*

affirm, substantially for the reasons expressed by Judge Rimm in his thorough oral opinion of May 31, 1984. We add only the following comments.

Plaintiffs' 1861 acres are about one-fourth of the undeveloped land in Weymouth Township. Pursuant to its statutory authority, the Pinelands Commission assigned 376 dwelling units to Weymouth under its Comprehensive Management Plan (CMP). *N.J.A.C.* 7:50–5.23(a)(2)(xxxvi). It was contemplated by the Pinelands Protection Act that the municipalities within the Pinelands would revise their master plans and zoning ordinances in accordance with the objectives of the CMP, within one year from the date of the CMP's adoption. *N.J.S.A.* 13:18A–12(b). Although the CMP was approved by the Commission on November 21, 1980, Weymouth, as of the date of trial, had not yet revised its master plan and zoning ordinance. If it had done so, the 376 permitted dwelling units would have been allocated under local standards to the undeveloped lands in the Township. We agree with Judge Rimm that it is impossible to say how many units would have been allocated to plaintiffs' lands.

Where a municipality has failed to produce local zoning legislation for certification by the Pinelands Commission, the Commission has the power under the CMP to approve landowners' applications for development. *N.J.A.C.* 7:50–4.11 to 4.14. It will also consider applications for waivers of strict compliance with the CMP. *N.J.A.C.* 7:50–4.61 *et seq.* At the time of the hearing, plaintiffs had not applied to the Commission either for permission to develop or for any waiver.

The focal dispute before the Tax Court was whether there was any realistic possibility of the development of plaintiffs' lands, and whether any prospects for development influenced their value. Judge Rimm concluded in the negative on both scores. There were three varying opinions before him on the subject, all of which Judge Rimm reasonably found speculative, not only as to the number of developable homesites, if any, but

also as to whether developability would have an effect on the value of plaintiffs' lands.

Plaintiffs' expert witness, William J. Stack, II, testified that the highest and best use of plaintiffs' lands was for conservation purposes, and that there were no practical prospects for development. He could see perhaps twenty homesites but no effect on value. Defendant presented Richard Perniciaro, a regional economist concentrating on the Pinelands. He said fifty-two homesites could be created out of plaintiffs' lands, a number which he derived from the irrelevant number of assessment lines in which the property appeared in the assessment records of the municipality. It was unclear what acreage would be contained in the fifty-two homesites or whether the remainder would retain substantial value or would consist of physically undesirable odds and ends. The highest estimate made by any witness of the value of a homesite was $15,000. Fifty-two homesites of that value would be worth substantially less than the value fixed by the Tax Court for all of plaintiffs' lands.

Defendant's other witness was Alberta Scates, defendant's tax assessor. She gave plaintiffs' lands an overall evaluation of $2,000 per acre, substantially more than plaintiffs paid for it before enactment of the Pinelands Protection Act. Her opinion was reasonably rejected by the Tax Court. At another point she said $1,300 to $1,500 per acre and, at yet another, under $1,000 per acre. The assessor also testified there were thirty-six developable homesites in 600 of the total 1861 acres. If that is so, the overall value depends on the unknown value of the remainder, which may well be less per acre than the per acre value fixed by the Tax Court for the whole parcel.

The reason for all of the inconsistent speculation was that there was no certified local master plan and zoning ordinance, and so it was impossible to say how many homesites plaintiffs would be allowed to develop, or if any, or under what restrictions. The reason for that was that Weymouth had failed to

satisfy its statutory obligation to produce a master plan and zoning ordinance conforming to the CMP, and that plaintiffs had not taken the opportunity to apply to the Pinelands Commission for permission to develop.

It appears to us that a Pinelands municipality which seeks to support an assessment on the foundation of the property's developability for homesites must either adopt local legislation conforming to law which create rights to develop homesites or, in default of that, come forward with evidence preponderating in favor of the developability of a number of homesites which would be approved by the Pinelands Commission. That may be difficult to do, but the affirmative proofs of developability should come from the municipality if it has not taken the steps mandated by statute to facilitate development. In the absence of such evidence, the Tax Court may properly find, as it did here, that developability is so speculative an element as to have no influence on value.[2]

The Tax Court was also correct in concluding that plaintiffs' lands, located in a Forest Area, were not entitled to Pinelands Development Credits, which are transferable under the CMP to properties in less restricted areas of the Pinelands. *N.J.A.C.* 7:50–5.41 through 5.47.

Finally, the municipality argues that the Tax Court judgment unconstitutionally deprives plaintiffs of all reasonable utilization of the land. That is not so. The Tax Court concluded that the current unlikelihood of development under the evidence before it made unpersuasive Weymouth's contention

---

[2]The State recognizes that the value of vacant land in the Pinelands has declined. It therefore adopted the Pinelands Municipal Property Tax Stabilization Act of 1983, *N.J.S.A.* 54:1–68 *et seq.* It provides for direct payments to municipalities to make up for lost assesssable values in vacant land. A municipality is not entitled to payments unless it has revised its land-use ordinance in compliance with the CMP. *N.J.S.A.* 54:1–77.

that developability enhanced values. Nothing the Tax Court did bars development or independently makes it less likely.

Affirmed.